**STATE OF WEST VIRGINIA**

*In re* **T.R. and I.A.**

**No. 20-0596** (Berkeley County 19-JA-66 and 19-JA-67)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.N., by counsel Jeffery Gould, appeals the Circuit Court of Berkeley County's July 15, 2020, order terminating her parental rights to T.R. and I.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Tracy Weese, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent, in admitting the in-camera testimony of T.R., and in denying her motion for a post-adjudicatory improvement.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed a child abuse and neglect petition alleging that I.A.'s father, L.A., had sexually abused T.R. and that petitioner failed to protect T.R. from that abuse. T.R. is L.A.'s step-daughter. At the time of the incidents in question, petitioner, L.A., their son I.A., and T.R. lived together. The DHHR alleged that T.R. disclosed L.A. put "his private part into her private part and it felt gross." This alleged abuse last occurred in December of 2018, when T.R. was eleven years old. According to the DHHR, T.R. had previously disclosed that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

L.A. sexually abused her in 2018. The DHHR alleged that petitioner was aware of T.R.'s earlier disclosure, yet continued to allow L.A. to have contact with T.R. Petitioner waived her right to a preliminary hearing.

The circuit court held adjudicatory hearings in September, October, and November of 2019.[2] L.A. was called as a witness twice, in September and November of 2019, but he refused to testify, citing "his U.S. Constitution [Fifth] Amendment rights." At the September 2019 hearing, petitioner testified that T.R. twice alleged that L.A. had been sexually abusing her. However, petitioner asserted that when she questioned T.R. following the earlier allegations, T.R. admitted that she lied. She further testified that she did not believe the abuse had occurred, because she would have noticed a change in the child or a change in how the child acted toward L.A., neither of which occurred. Petitioner detailed the family's general schedule and testified that she did not believe L.A. would have had an opportunity to be alone with T.R. to commit the abuse. However, the circuit court specifically found that, based on the schedule petitioner provided, "there would have been occasions for [T.R.] and [L.A.] to be alone together."

Also at the September 2019 adjudicatory hearing, a Child Protective Services ("CPS") investigator testified regarding the parties' history of referrals. She stated that in August of 2018, T.R. disclosed that L.A. sexually abused her, but the matter was considered "unsubstantiated" because T.R. did not disclose sexual abuse during a later held forensic interview. T.R. was ten years old at the time. Following T.R.'s second claim of sexual abuse by L.A., the investigator interviewed T.R. in May of 2019. During the interview, T.R. disclosed that L.A. had touched her breasts and her vagina. The investigator noted that T.R. had difficulty narrowing the time frame of abuse, but that T.R. stated L.A. had not abused her since her eleventh birthday, which was in December of 2018. The investigator also testified that T.R. stated that the last time L.A. abused her, he put his mouth on her breasts. T.R. stated that she was in petitioner's bedroom at the time and that petitioner was in the kitchen.

T.R.'s forensic interviewer appeared at the September 2019 hearing and was recognized by the court as an expert in the field of forensic interviewing of juveniles. The forensic investigator testified that she interviewed T.R. twice, first in September of 2018, and second in May of 2019. The interview in September of 2018 followed T.R.'s first disclosure of abuse. During the first interview and prior to the typical rapport building between an interviewer and a child, T.R. stated that she was "there to talk about something that she needed to clear up, that she had lied about something," and ultimately recanted the allegation against L.A. that she made in August of 2018. The interviewer noted that T.R. was transported to the September 2018 interview by petitioner and her aunt. The forensic interviewer explained that the validity of forensic interviews can be affected by the person who transports the child to the interview. The forensic interviewer testified that if petitioner "did not believe the allegation, [she] would not [have been] an appropriate person to bring the child for an interview."

---

[2]Petitioner and L.A. share Spanish as their first language and utilized interpreters throughout these proceedings.

2

The forensic interviewer also provided testimony regarding the May 2019 interview, during which T.R. detailed the instances of sexual abuse. T.R. disclosed that L.A. first touched her inappropriately when she was seven years old, and that he touched her breast and her leg. T.R. disclosed "several other instances" of abuse involving touching on the breast and disclosed that there was an incident in which petitioner inserted two fingers into her vagina and that he had "put his private part into her private part" on at least one occasion. T.R. also stated that petitioner tried "to put a balloon in her when she was lying on the bed." The interviewer testified that T.R. was "able to answer concrete questions," but she had difficulty answering abstract questions, putting events in order, weighing time frames, and recalling how many events took place. The interviewer explained that a child's ability to answer questions about when an event took place and how many times an event occurred typically develops between ages ten and twelve, so she was not surprised that T.R., then age eleven, had difficulty answering those questions. The interviewer believed that T.R. was credible due to the descriptive details she was able to provide.

In October of 2019, a handwritten statement from T.R.'s journal, dated the day of the September adjudicatory hearing, was discovered and brought before the circuit court. The contents of the statement indicated that T.R. had lied about the allegations of sexual abuse contained in the petition. As a result, the parties agreed to recall some witnesses, and the circuit court determined it was necessary to take T.R.'s in-camera testimony, to which petitioner did not object. T.R. testified that her recantation of the allegations in the September of 2018 interview was false, and that the handwritten statement in her journal – in which that she had lied about the May of 2019 sexual abuse allegations – was also false. T.R. explained that petitioner pressured her to recant the allegations in 2018 and her aunt pressured her to write the statement in her journal. She testified definitively that L.A. had sexually abused her, stating "[h]e did it," which the circuit court found "truthful and compelling, particularly given [T.R.'s] demeanor and emotional presentation." T.R. also testified that petitioner visited her at the aunt's home, where she was placed pending these proceedings. T.R. testified that she was told not tell anyone about the visits, and she complied because "she knew they were going to take [petitioner] away from her." The circuit court referenced petitioner's testimony that she visited T.R.'s placement to visit I.A. only, and avoided contact with T.R. while there. The circuit court found that petitioner's testimony was "not credible and [was] false" and that petitioner's subterfuge in maintaining unsupervised contact with the children, despite the court's order prohibiting such contact, was "disturbing evidence of her lack of parental protective capacity."

At a hearing on November 15, 2019, L.A. called an expert in forensic psychology to testify as to the "reliability" of T.R.'s disclosures. The expert explained that he focused on "the consistency of the individual's statements." The expert opined that T.R.'s narratives were "unreliable because of their consistency," due to her prior recantations. He explained that an assertion of abuse with a recantation followed by a reassertion is "by definition not reliable." However, the expert also testified that "if [petitioner] had been pressuring [T.R.] to recant, her bringing [the child] to the [September of 2018 Child Advocacy Center] interview would be significant."

A second CPS worker testified that in September of 2019, she received a text from T.R.'s aunt, with whom the children were placed at that time. The worker testified that, based on that text, she believed that T.R was with the mother, which was in violation of the circuit court's

orders. The worker testified that two days later, T.R. told the worker that she had "some bad news," and recanted the allegations raised in the instant petition. According to the worker, T.R. explained that family members had advised her that if she did not say that she lied about the allegations, then she would be taken away from petitioner permanently. Thereafter, the DHHR moved T.R. and I.A., out of the relative's home and into foster care, where they remained throughout the remainder of the proceedings.

In considering the evidence, the circuit court found that petitioner failed to protect the child from L.A., "having at least known about the previous allegation made by [T.R.]" against him. The circuit court further found that petitioner's actions "contributed to the emotional abuse of [T.R.] by failing to provide the [child] with emotional support during times of family conflict and struggle" and by "consistently pressuring [T.R.] to recant her allegations." Ultimately, the circuit court adjudicated the children as abused children and petitioner as an abusing parent. The circuit court also found that the DHHR was not required to make reasonable efforts to preserve the family unit based upon its finding that L.A. had sexually abused T.R., which constituted aggravated circumstances pursuant to West Virginia Code § 49-4-602(d)(2)(E). Thereafter, petitioner filed a motion for a post-adjudicatory improvement period.

In June of 2020, the circuit court held a dispositional hearing. Petitioner testified in support of her motion. The DHHR called petitioner's case worker, who recommended termination of petitioner's parental rights. The circuit court found that petitioner had violated no contact orders and restrictions on visitations with the children. Further, the circuit court found that T.R. "was clear that she was pressured to recant and to write the [September journal entry] by [petitioner] and other family members." The court noted that the proceedings had been ongoing "for over a year" and that this dispositional hearing was the first time petitioner stated that she believed T.R.'s allegations. The circuit court found that "[a]s of the date of disposition [petitioner] ha[d] stated that she ha[d] done nothing wrong." The circuit court also found that petitioner had failed to participate in evaluations or assessments that may have identified parental deficiencies. Accordingly, the circuit court denied petitioner's motion for a post-adjudicatory improvement period upon finding that she was not likely to fully participate in the same. The circuit court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, the circuit court terminated petitioner's parental rights by its July 15, 2020, order. Petitioner now appeals that order.[3]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[3]The parental rights of the children's respective fathers were terminated below. According to the parties, the permanency plan for the children is adoption in their current foster placements.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that she failed to protect the children. She further argues that the evidence showed that she never witnessed L.A. sexually abusing T.R. and that T.R. recanted her earlier allegation of abuse. Petitioner asserts that she "attempted to ascertain the truth" following T.R.'s first allegation of abuse. Based on this evidence, petitioner argues that the circuit court should have found that she acted appropriately in trying to protect T.R. However, petitioner's argument misstates the record on appeal, and we, therefore, find she is entitled to no relief.

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further,

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Here, the circuit court found that T.R. provided "truthful and compelling" testimony that L.A. had sexually abused her. T.R.'s allegations were supported by "proportionate" sensory details related to the sexual acts L.A. perpetrated upon her. While petitioner asserts that she "attempted

to ascertain the truth" regarding this second set of allegations, the circuit court found that she "consistently pressured" T.R. to recant her allegations. We agree with the circuit court's conclusion that petitioner emotionally abused T.R. by pressuring her to recant the sexual abuse allegations and find that it is fully supported by the record below. Accordingly, we find no error in this regard.

In a related argument, petitioner asserts that the circuit court erred in considering T.R.'s in-camera testimony because it did not allow counsel access to the hearing, did not allow counsel to view T.R.'s testimony, and did not allow counsel to submit questions. Petitioner cites generally to Rule 8(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings in support.[4] Notably, Rule 8 provides circumstances when attorneys may be restricted from personally witnessing the testimony and requires the circuit court to "electronically or stenographically" record the hearing, which occurred in this case. More critically, petitioner failed to object when the circuit court set forth the terms of T.R.'s in-camera testimony. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we find no merit to petitioner's argument, and no error in the circuit court's reliance on T.R.'s testimony.

---

[4]Rule 8 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides the following:

> The court may conduct in camera interviews of a minor child, outside the presence of the parent(s). The parties' attorneys shall be allowed to attend such interviews, except when the court determines that the presence of attorneys will be especially intimidating to the child witness. When attorneys are not allowed to be present for in[-]camera interviews of a child, the court shall, unless otherwise agreed by the parties, have the interview electronically or stenographically recorded and make the recording available to the attorneys before the evidentiary hearing resumes. Under exceptional circumstances, the court may elect not to make the recording available to the attorneys but must place the basis for a finding of exceptional circumstances on the record. Under these exceptional circumstances, the recording only will be available for review by the Supreme Court of Appeals. When attorneys are present for an in camera interview of a child, the court may, before the interview, require the attorneys to submit questions for the court to ask the child witness rather than allow the attorneys to question the child directly, and the court may require the attorney to sit in an unobtrusive manner during the in camera interview. Whether or not the parties' attorneys are permitted to attend the in[-]camera interview, they may submit interview questions and/or topics for consideration by the court.

Petitioner also argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period.[5] She asserts that the circuit court incorrectly found that she failed to acknowledge the conditions of abuse and neglect "simply because she could not determine what the truth was" regarding T.R.'s allegations of sexual abuse. We find no merit to this argument.

West Virginia Code § 49-4-610(2)(B) provides that a circuit court may grant a parent a post-adjudicatory improvement period when she "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Finally, "if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004).

Petitioner again ignores the circuit court's finding that she was instrumental in T.R.'s recantation of the allegations. The evidence shows that petitioner was not attempting to determine the truth but, instead, was actively manipulating T.R. This apparent denial of the facts of this case further serves to underscore the circuit court's conclusion that petitioner failed to acknowledge the conditions of abuse and neglect and failed to acknowledge the effect that her actions had on the children. As noted by the circuit court, "[a]s of the date of disposition [petitioner] ha[d] stated that she ha[d] done nothing wrong." We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Petitioner's failure to acknowledge the emotional abuse that she inflicted on T.R. by pressuring T.R. to recant the allegations of sexual abuse is significant evidence that a post-adjudicatory improvement period would have been futile. Moreover, the circuit court found that petitioner failed to participate in evaluations that would have identified parenting deficiencies, which supports the circuit court's conclusion that she was not likely to fully participate in the services

---

[5]On appeal, petitioner clarifies that her motion for a post-adjudicatory improvement period was orally modified to a motion for a post-dispositional improvement period at the final dispositional hearing. For the purpose of our analysis, this distinction has no consequence. Petitioner's burden of proof for either improvement period is identical. *See* W. Va. Code § 49-4-610(2) and 610(3).

offered in an improvement period. Accordingly, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

This evidence further supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, petitioner's failure to acknowledge the conditions of abuse and neglect serves as a significant barrier to parental improvement. Without acknowledging the conditions of abuse and neglect, there was no reasonable likelihood that petitioner could correct those conditions within a reasonable time. Thus, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future.

Finally, we have held as follows:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's finding is fully supported by the record on appeal, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 15, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison